BRENNAN-LOVE COMPANY V. JAMES H. McINTOSH.

FILED SEPTEMBER 18, 1901.   No. 9,791.

1. **Evidence.** Evidence examined, and *held* sufficient to support the verdict of the jury.

2. **Verdict.** Verdict *held* to be not contrary to the instructions of the court.

3. **Question: OBJECTION: TENDER.** When to a question in direct examination an objection is interposed and sustained, there must be an offer to prove the facts sought to be elicited thereby, and a ruling of the trial court had thereon, in order to present to this court for its consideration the ruling complained of.

ERROR from the district court for Douglas county. Tried below before DICKINSON, J. *Affirmed.*

*Duffie, Gaines, Kelby & Storey,* for plaintiff in error.

*James H. McIntosh,* for himself, and *Charles A. Goss,* with him.

HOLCOMB, J.

The plaintiff began a civil action and recovered judgment in the trial court. The defendant brings the case here for review by proceedings in error. The suit was instituted to recover the sum of $519.25 for services alleged to have been performed and money expended for and on behalf of the defendant in and about the examination of and perfecting the title to certain real estate belonging to one Charles J. Karbach, who procured a loan thereon in the sum of $150,000 from the New York Life Insurance Company through the defendant acting as a broker or loan agent in negotiating and procuring such loan. The alleged contract was a verbal one and the value of services rendered is undisputed. The answer denied any liability on the part of the defendant, denied that it had made the contract as alleged or that any service had been performed or money expended for or on its behalf. The real grounds of the defense interposed were that, while

the services were performed as alleged, which were conceded to be of the value claimed by the plaintiff, and were rendered at defendant's request, the defendant, however, it is contended, was at the time acting as the agent of Karbach, the borrower, and employed the plaintiff as agent, and for its principal, and not on its own account, and that Karbach, and not the defendant, was liable to the plaintiff for compensation for the services rendered by reason of such employment. The plaintiff is by profession an attorney and counselor at law, residing in Omaha. From the evidence it is made to appear that he had been designated by the insurance company making the loan to examine and pass upon titles to real estate and perform other incidental professional services in relation to contemplated loans to be made by the company, to the end that a valid first lien would be acquired on the real estate mortgaged as security for such loans as might be finally consummated.

In a letter of instructions to the plaintiff, as the attorney of the company for the purposes aforesaid, it is stated: "In this and in all similar cases in which you may act for us, please to bear in mind that all your costs and charges are to be paid by the borrower, whether the loan goes through or not." The defendant places considerable stress on this clause as supporting its position that the borrower, Karbach, and not the defendant, was responsible for the value of plaintiff's services which are made the basis of the present action. The letter clearly advised the attorney that he must not look to the company for his compensation. It would not, however, preclude the plaintiff from entering into any contract he might think advisable as to whom he should look for compensation. The statement that charges and costs are to be paid by the borrower was for the purpose of negativing any responsibility on the part of the company, and left the attorney free to provide for his pay in any manner that he might adopt which was found agreeable and advisable.

It is also shown that in a contract between the defendant and the borrower regarding the negotiation of the loan the borrower was to pay for examination of the title and other related services of the kind and nature that the plaintiff performed for which the defendant is sued to recover the value thereof. It is equally apparent from the record that the plaintiff was aware that the defendant was acting as a broker or loan agent in obtaining the loan for the borrower, Karbach.

The court instructed the jury, at the defendant's request, that, if they found from the evidence that the defendant acted as a broker for the borrower, Karbach, in procuring him the loan and such agency was known to the plaintiff, then the plaintiff must look to the principal, Karbach, for pay for his services, and not to the defendant, unless it was further found that the defendant expressly agreed to pay for said services. As presented to the jury the instructions, as a whole, required them to ascertain from the evidence as a question of fact whether in making the contract, which it is conceded was made with the plaintiff for the services he rendered in and about the examination and perfecting of the title to the real estate offered by the borrower as security, the defendant acted in its own behalf as a principal in the transaction or whether it acted only as the agent of the borrower and for that reason assumed no personable responsibility.

An intelligent understanding of the legal principles applicable in determining the respective rights of the parties requires of us, in addition to what has been said, to speak briefly of the relations existing between the parties at and about the time of the alleged contract by virtue of which the plaintiff prosecutes the present action. The evidence shows that, prior to the time the plaintiff was requested to perform the services for which he sues to recover the value thereof, he had rendered similar service to the defendant in relation to loans made to other parties through the defendant acting as a loan broker, for which

services the plaintiff had presented his bill to the defendant and received from it his pay therefor; that in the performance of such services, the plaintiff was acting under a contract made with the defendant acting in its own behalf, and not as the agent of the borrower.

In each of the two prior transactions had between the plaintiff and the defendant in which the defendant compensated the plaintiff for his services complaint was made to him that his charges were too high. This becomes pertinent in the light of what follows. On March 28 the defendant was advised by telegraph that the insurance company making the loan had accepted the application, and at once obtained from Karbach a written contract authorizing it to secure the loan on terms stated in the contract as to commissions and other expenses to be borne by the borrower in consummating the loan. On the next day, the following conversation occurred between the plaintiff and one of the members of the defendant company, as testified to by the plaintiff, and which is undisputed:

Q. When did you have your first dealing with the defendant in respect to the matters charged in the petition?

A. In August, 1895—to matters charged in the petition?

Q. Yes.

A. I beg your pardon—In March, 1896.

Q. Where was your first talk with the defendant, or any one representing the defendant, in that respect?

A. At the intersection of 16th and Douglas streets was my talk with Mr. Brennan, on the 29th of March, 1896. I think I had not had any talk with him before that.

Q. What relation did Mr. Brennan at that time sustain to the defendant?

A. I understood him to be its president.

Q. What was said on that occasion at that place?

A. I was on my way to the post-office; it was a little after 12 o'clock on Sunday the 29th day of March; Mr. Brennan was coming from the direction that I was going,

and he stopped me and said that it looked as if he was going to get the loan through with the New York Life for Charles J. Karbach on the Karbach property, the Karbach building at the corner of 15th and Douglas, and the Karbach hotel. Now, he says, if this goes through, I want to know what you are going to charge us. If you are going to charge us the way you have been doing I am afraid we can't do business together. Well, I said to him that I did not know what I would charge him; that I would charge him whatever my services were reasonably worth; and that is all I could tell him. Well, he says, there won't be much work in it. The Northwestern Mutual Life has a mortgage on the property, and the title has been thoroughly examined, and there won't be much work in it. Well, I said if there would not, then my fee would not be so big; but I did not know what I would charge; and I said to him that that was the only fair way for a lawyer to do business; any other way, either the client cheated him, or he cheated the client. I said I can't tell what the work will be.

After testifying with particularity as to the prior relations existing between the plaintiff and the defendant with reference to other loans, in which it appears that the plaintiff was employed by the defendant acting in its own behalf and not as the agent of the borrower, and that the defendant was well acquainted with the relations existing between the plaintiff and the loan company and knew the purport of the letters of instructions and terms upon which the plaintiff was acting as the company's agent for the purpose of examining titles, etc., the witness testifies to the receipt of papers from the company making the loan with the information that the application for the loan had been accepted; that he notified defendant of that fact by letter, and that a day or two after writing the letter, "Mr. Brennan brought the abstracts of title to my office, and told me to go ahead with the matter; and I did." There is much testimony showing what transpired subsequently to plaintiff's employment, and that all the

dealings and transactions, of which there were many, with reference to the necessary steps to be taken in clearing the title and perfecting the loan on the property were had between the plaintiff and defendant, which are confirmatory of the contention of the plaintiff that he was employed by and rendering service to the defendant acting in its own behalf. From all the evidence, the natural and logical deductions to be made are that the defendant as a loan broker contracted with the borrower to negotiate for him a loan of the amount stated at a stipulated rate of interest on his real property, for which a certain commission was to be allowed as compensation and certain expenses incident to perfecting the loan to be borne by the borrower. In effectuating its contract, the defendant contracted with the plaintiff for his services in passing on the title and work of a kindred character, and for which it thereby became liable for the reasonable value thereof; that the defendant was not acting for and as the agent of the borrower but in its own behalf in executing the contract which it had entered into with the borrower. We are not in doubt as to the evidence being sufficient to support the conclusion reached by the jury on this issue. What is the contract of the parties? Under the evidence, it is shown that the defendant approached and sought his services and to obtain an understanding as to the amount he would charge the defendant, not the borrower, for such services and which were required by the loan company to be performed by the plaintiff and none other, and at the same time making complaint of charges made regarding similar services performed in relation to other loans; also intimating that unless satisfactory terms could be arranged, the defendant would not do business with the plaintiff but would negotiate the contemplated loan with another party as lender. The plaintiff declined to state a certain sum as compensation but stated he would charge what the services were reasonably worth to be determined after they were rendered. The defendant later on brought plaintiff the abstracts of title and told

him to go ahead and do this work. This certainly is all that is necessary to constitute a valid verbal contract for services for which the reasonable value thereof is to be paid by the party having the benefit of such service. One proposes, the other accepts, and the services are rendered in performance of the contract thus entered into. It is contended that the verdict is contrary to the ninth instruction given at the request of the defendant, wherein the jury were instructed that their verdict should be for the defendant unless it is found from the evidence that the plaintiff gave exclusive credit to the defendant for his services and so informed the defendant. And also by the second and fourth instructions, requested by defendant, wherein the jury were instructed that their verdict should be for the defendant unless they found that the defendant expressly agreed to pay for said services. The instructions were obviously as favorable to the defendant as it could reasonably ask.

By the pleadings, the plaintiff sued on the alleged contract with the defendant for the reasonable value of the services performed thereunder. The defendant denied the contract. The burden of proof was on the plaintiff to prove the contract as alleged. The instruction, when considered with the others given on the court's own motion, told the jury that in order to hold the defendants personally liable it must appear from the evidence that the plaintiff was dealing with it as a principal and looked to it for his compensation, and so advised it, and that an express contract must have been proven. The evidence justifies the verdict under the instructions referred to when fairly considered. It seems reasonably clear that the defendant entered into the contract with knowledge that the plaintiff was performing for it the required services and looked to it for his compensation. He so stated when it was attempted to have him fix his charges at a specified sum. He said to a member of the firm, "I will charge you what the services are reasonably worth." If the contract is proven as alleged, as we think it was, it can not be said

that the verdict is contrary to the instructions which required the jury to find an express contract to have been entered into between the parties to the action. The plaintiff was suing on an express and not an implied contract. The instructions said nothing more than that the plaintiff must prove the contract alleged. That is, that the contract was with the defendant acting on its own behalf and not as the agent of another.

It is argued that the court erred in sustaining an objection to certain testimony offered in surrebuttal. Mr. Brennan, a member of the defendant company, was asked on cross-examination if he had in his testimony in the county court in the same case testified to a certain statement just testified to by him in his direct examination, and he answered that he had so testified in the county court. The plaintiff in rebuttal was permitted to call a witness who testified that, in his testimony in the county court, the witness Brennan had not testified to the statement about which he was interrogated on cross-examination and stated that he had. After the plaintiff had introduced his evidence in rebuttal, the defendant called a witness in surrebuttal evidently for the purpose of corroborating the testimony of the witness Brennan as to the disputed statement claimed to have been made by him in the county court with reference to the conversation had between him and the plaintiff on the Sunday heretofore referred to. An objection to the question was interposed and sustained. The objection was well taken, in any view of the case, because the question was not confined to the particular statement in dispute and regarding which the witness Brennan had been contradicted. An offer was then made to prove by the witness that Brennan had testified in the county court to the same statement testified to by him in the district court and regarding which he had been contradicted by the plaintiff in rebuttal. The offer did not correspond to the question to which the objection was sustained, and no ruling appears to have been made by the court on the offer.

The witness was then asked directly if Mr. Brennan had not, in his testimony in the county court, made the statement regarding which there was a dispute in the testimony. An objection was interposed as incompetent, improper, irrelevant and immaterial and not proper sur-rebuttal, which was sustained. No offer of proof was made and no ruling obtained on the former offer. There being no ruling on the prior offer, and no renewed offer after the question had been objected to and the objection sustained, the record presents no ruling of the court which may properly be reviewed. After the witness had been asked a proper question, or at least the only question that, in any view of the subject, can be regarded as proper, and the objection sustained, there should have been an offer of proof of the fact sought to be elicited thereby and a ruling obtained on the offer. In no view of the case, as the record is presented to us, has there been a ruling on an offer to prove the facts sought to be established by the question objected to. This is essential, in order to have the alleged error considered in this court. Whether or not there is shown any abuse of discretion in sustaining the objection to this proposed testimony in surrebuttal, even if the record properly presented the question for review, may be open to doubt.

There appearing no prejudicial error in the record, the judgment of the district court should be, and therefore is,

AFFIRMED.

SULLIVAN, J., absent, not voting.